Cite as 2025 Ark. App. 124

# ARKANSAS COURT OF APPEALS
DIVISION III
No. CR-24-211

| | |
|---|---|
| MELANIE LATRECE ALLEN<br><div align="right">APPELLANT</div><br>V.<br><br>STATE OF ARKANSAS<br><div align="right">APPELLEE</div> | Opinion Delivered February 26, 2025<br><br>APPEAL FROM THE SALINE COUNTY CIRCUIT COURT<br>[NO. 63CR-22-948]<br><br>HONORABLE BRENT DILLON HOUSTON, JUDGE<br><br>AFFIRMED |

**CINDY GRACE THYER, Judge**

Melanie Allen was convicted by a Saline County jury of one count of possession of methamphetamine and was sentenced to the Arkansas Division of Correction for twenty-four months as a judicial transfer to the regional correctional facility. She appeals her conviction, arguing that there was insufficient evidence to support the verdict and that the circuit court erred in denying her recusal motion. Finding no error, we affirm.

At approximately 10:30 p.m. on August 14, 2022, Officer Brandus Howard of the Benton Police Department instituted a traffic stop of a white Nissan Versa Note for driving without a license plate. Allen was the sole occupant of the vehicle. Allen provided the officer with her driver's license and a March 2022 bill of sale for the vehicle and explained that she did not have plates for the vehicle because she was having issues with the department of revenue.

While interacting with Allen, Officer Howard noticed an intermittent odor of burned marijuana emanating from the vehicle. Allen informed Officer Howard that there was marijuana in the car, provided him with a pouch from a dispensary, and produced a valid medical marijuana card. The jars inside the pouch appeared to be sealed, but the bag itself was open. However, because he smelled burned marijuana, Officer Howard conducted a search of the vehicle.

During the search, Officer Howard found a backpack in the passenger floorboard of the vehicle. Inside was a yellow grocery bag containing a "meth pipe," a used syringe, a syringe with approximately fifteen milliliters of what was later determined to be methamphetamine, and a bottle cap with methamphetamine residue inside it. An additional 1.8 grams of crystallized methamphetamine was found inside two corner-tied baggies.

Allen was subsequently charged with one count of possession of a controlled substance, methamphetamine, a Class D felony.

Prior to trial, Allen moved to suppress the evidence obtained during the search of her vehicle. She argued that her possession of marijuana was not illegal due to her valid medical marijuana card; therefore, the smell of marijuana was insufficient to support probable cause for the subsequent search The court denied the motion, concluding that, even with a valid medical marijuana card, Allen was not permitted to smoke marijuana in her vehicle; thus, the smell of burned marijuana was sufficient to give Officer Howard probable cause to search.

The judge also told the parties before trial that he knew Allen's parents but did not intend to recuse himself from presiding over her trial. The court stated:

> I did not know Wanda and Samuel were your parents. Okay. I know them. I consider them friends and—but I'm not going to recuse at this point in time. Whatever the jury does is—but I did not know. If you would tell them I did not know that they were your parents, ma'am. Okay. . . . I go to church with them, but I consider them—they are good people and good close friends. I don't have a problem. It's not going to affect my decision making in this case if the State is concerned about that.

The State indicated that it did not have a problem with the judge's decision. Defense counsel, on the other hand, asked the judge to recuse himself, indicating that part of the defense strategy concerned Allen's relationship with her parents. The court denied the motion to recuse, stating:

> I will treat her fairly. I see this as nothing more than another reason we're trying to postpone and put off this trial. I think the world of your parents, ma'am, but I don't know you, and I will, quite frankly, see, just like I see for everyone, that they are treated fairly and justice is served in your case. And the fact that I know your parents will have no bearing on this case at all. None. So motion to recuse is denied.

At trial, Officer Howard testified regarding the circumstances surrounding the stop and the subsequent search. Body-cam footage depicting the events was also played for the jury. Finally, the State presented the testimony of Felisia Lackey, the chief forensic chemist at the state crime lab. She testified that the substances collected during the search were methamphetamine.

When the State rested, Allen moved to renew her pretrial motions to suppress and recuse. The court denied both.  As for the motion to recuse, the court said, "As I stated

3

previously, I know the Defendant's parents. I think very much of the Defendant's parents. I do not, however, know the Defendant, and for that reason I am not recusing from this case."

Allen then moved for a directed verdict on the grounds that the State had "failed to prove sufficient evidence that Officer Howard had probable cause to conduct the search." In response, the State explained the probable cause behind the search. It also argued the sufficiency of the evidence presented on the possession charge—that Allen was the only occupant of the vehicle, that the methamphetamine was in a baggie within her reach inside the vehicle in a backpack, that she admitted to the officer that the baggie was there during the course of the investigation, and that the substance inside the baggie tested positive for methamphetamine at the crime lab. The court denied the motion.

The defense did not elect to call any witnesses and renewed its prior motions. As for the directed-verdict motion, Allen argued, "The Defense would also respectfully renew its motion for Directed Verdict on the grounds that the State has failed to provide sufficient evidence to establish probable cause."

The court again denied the motion. As for the motion to recuse, the following colloquy occurred:

COURT:    Okay, and as I've stated, I've known Samuel and Wanda Calvin for a good while, and I'll tell you, I'll tell everybody in this room, this world would be better off with more people in it like Wanda and Samuel Calvin. But, me knowing them and thinking that about them is not going to affect my judgment in this case. I am not going to treat Ms. Allen any better or worse because of me knowing her parents. I'm just simply not going to do it. And my job here is to see that she has a just and fair trial, and I believe that that is what has occurred in this case.

4

> And I'll point out that the jury is going to be the ones that decide guilt in this case, not me. And they will make a recommendation to me as to what they think is the appropriate sentence, if they do come back with a guilty finding, and I will take that into consideration. But knowing her parents is not going to affect my decision making in anything that I do in this case. It will be based upon the facts and the law.

. . .

COUNSEL: My client's concerns are that, based to sentencing that you would take somewhat what of an adversarial position from her parents. Taking that adversarial position and basing your sentencing, she believes may—

COURT: She can take an adversarial position if she wishes. As I said, I am not going to make any decision that hurts her or helps her based upon the fact that that's who her parents are. I will make note that they have been here for this entire proceeding to watch. The basis for why they're here, I don't know. I'm not going to—I haven't talked to them. I'm not going to talk to them. As I said, I didn't know who they were until this morning. But if she wants to get up and call them every name in the book, that is perfectly fine. That is her right to do so, and it will not affect how I decide this case.

The jury subsequently found Allen guilty and recommended a two-year sentence in the Arkansas Division of Correction. The court accepted the jury's recommendation but modified it to a judicial transfer to a regional correctional facility so that Allen could enter a drug-treatment program. This timely appeal followed.

## I. *Directed Verdict*

Allen first argues that the circuit court erred in denying her motion for directed verdict. More specifically, she claims that the State failed to provide sufficient evidence of her knowledge, intent, and control over the methamphetamine. She asserts that her presence alone was insufficient to prove constructive possession and that there was no evidence she

had engaged in any activity indicating she was aware of the controlled substance. She argues that given the lack of direct evidence linking her to the controlled substances found in the vehicle and the necessity for the jury to speculate on her knowledge and control over the contraband, there was insufficient evidence to support her conviction.

Allen's sufficiency argument is not preserved for our review. Arkansas Rule of Criminal Procedure 33.1(a) requires a criminal defendant in a jury trial to move for a directed verdict at the close of the State's case and at the close of all the evidence. The rule is strictly construed, and to preserve a challenge to the sufficiency of the evidence, an appellant must make a specific motion for a directed verdict that informs the circuit court of the exact element of the crime that the State has failed to prove. *Mendoza v. State*, 2024 Ark. App. 322, 689 S.W.3d 475. Our appellate courts have been steadfast in holding that we will not address the merits of an appellant's insufficiency argument when the directed-verdict motion is not specific. *Daniels v. State*, 2018 Ark. App. 334, 551 S.W.3d 428. Further, a party cannot enlarge or change the grounds for an objection or motion on appeal but is bound by the scope and nature of the arguments made at trial. *Id.*

At the close of the State's case, Allen moved for a directed verdict, arguing only that the State had "failed to prove sufficient evidence that Officer Howard had probable cause to conduct the search." After the defense rested its case, Allen renewed her prior directed-verdict motion on the same grounds. On appeal, Allen has changed her argument and argues that there was insufficient proof that she was in actual or constructive possession of the methamphetamine found in the vehicle she was driving or that she had knowledge of the

6

contraband. Because Allen did not raise these specific arguments during her directed-verdict motions below, these arguments are not preserved for review.

## II. *Recusal*

Allen next argues that the circuit court erred in denying her recusal motions. She claims that the trial judge's personal relationship with her parents created an appearance of potential bias sufficient to justify recusal.

In considering the circuit court's denial of Allen's motion to recuse, we are guided by the legal principles set forth in *In re Estate of Edens*, 2018 Ark. App. 226, at 19–20, 548 S.W.3d 179, 190–91:

> Canon 2 of the Arkansas Code of Judicial Conduct provides that a "judge shall perform the duties of judicial office impartially, competently, and diligently." Rule 2.11(A)(1) of the Code provides that a judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including when the judge has a personal bias or prejudice concerning a party or a party's lawyer. A judge is presumed to be impartial, and the party seeking recusal must demonstrate bias or prejudice on the part of the judge. *Ferren v. USAA Ins. Co.*, 2015 Ark. App. 477, 469 S.W.3d 805. The proper administration of the law requires not only that judges refrain from actual bias but also that they avoid all appearance of unfairness. *Id.* When a judge exhibits bias or the appearance of bias, the appellate court will reverse. *Id.* We review a trial court's denial of a motion to recuse under an abuse-of-discretion standard. *Ferguson* [*v. State*, 2016 Ark. 319, 498 S.W.3d 733]. A clearly erroneous interpretation or application of a law or rule will constitute a manifest abuse of discretion. *Id.* To decide whether there has been an abuse of discretion, the appellate courts will review the record to determine if prejudice or bias was exhibited. *Owens v. State*, 354 Ark. 644, 128 S.W.3d 445 (2003).

Moreover, the party seeking the disqualification bears the burden of proving the circuit court's bias or prejudice. *See also Keene v. State*, 56 Ark. App. 42, 938 S.W.2d 859 (1997); *Gentry v. State*, 47 Ark. App. 117, 886 S.W.2d 885 (1994). It is clear that Allen has

failed to meet her burden here. She has made no showing that she was treated unfairly during trial. Moreover, she has not alleged any specific instance of bias or of even perceived bias, nor has she shown in what way she was prejudiced by the circuit judge's failure to recuse himself. The jury found Allen guilty of possession of methamphetamine, a Class D felony, which subjected her to a possible sentence of up to six years in prison. The jury recommended a two-year sentence in the Arkansas Division of Correction. The State recommended, and Allen's counsel agreed, that the jury's recommendation should be modified to allow for a judicial transfer to a regional correctional facility so that Allen might obtain drug treatment—something presumably beneficial to her. The circuit court accepted that recommendation. Without more, we cannot find that the circuit court abused its discretion in denying the motion to recuse. *See Rudd v. State*, 2010 Ark. App. 784 (no error where the judge knew a witness's parents); *Kimbrough v. Kimbrough*, 83 Ark. App. 179, 119 S.W.3d 66 (2003) (no error where the judge knew the family of an incapacitated person whose guardianship was at issue).

Affirmed.

HARRISON and TUCKER, JJ., agree.

*Jones Law Firm*, by: *F. Parker Jones III*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Christian Harris*, Ass't Att'y Gen., for appellee.